## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| HOUSTON CASUALTY COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>DORAN CONSTRUCTION, LLC;<br>KINZLER CONSTRUCTION<br>SERVICES, INC.; AND BRADLEY<br>BURLINGAME,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DECLARATORY<br>JUDGMENT**<br>**(Jury Trial Demanded)** |

Plaintiff, Houston Casualty Company ("HCC"), by and through its undersigned counsel, for its Complaint for Declaratory Judgment against Defendants, Doran Construction, LLC ("Doran"), Kinzler Construction Services, Inc. ("Kinzler"), and Bradley Burlingame ("Burlingame"), alleges as follows:

### <u>INTRODUCTION</u>

1.     This is an action for declaratory judgment and other relief, brought pursuant to 28 U.S.C. §§ 2201 and 2202, for the purpose of resolving an actual controversy between the parties regarding their respective rights and obligations under a liability insurance policy that HCC issued to Doran.  In particular, HCC seeks a declaration that it owes no defense or indemnity obligation under the subject insurance policy with respect to its purported insureds' alleged liability in an underlying civil lawsuit pending in the District Court of Hennepin County, Minnesota, styled *Bradley Burlingame v. Kinzler Construction*

*Services, Inc. and Doran Construction Company, LLC*, Case No. 27-CV-21-2731 (the "Underlying Lawsuit").

## THE PARTIES AND CITIZENSHIP

2.     HCC is a corporation organized and existing under the laws of the State of Texas, with its principal place of business in Houston, Texas.  HCC is authorized to transact the business of insurance in the State of Minnesota.

3.     Upon information and belief, Doran is a Minnesota limited liability company, with its principal place of business in Bloomington, Minnesota.

4.     Upon information and belief, Doran's managing and sole member, Anne T. Behrendt, is a citizen of Minnesota.

5.     Upon information and belief, Kinzler is a corporation organized and existing under the laws of the State of Iowa, with its principal place of business in Ankeny, Iowa.

6.     Upon information and belief, Burlingame is a citizen of Minnesota and he filed the Underlying Lawsuit in the District Court for Hennepin County, Minnesota.  HCC seeks no separate relief or judgment against Burlingame and, rather, seeks only to bind such defendant to any judgment rendered herein.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over this action, pursuant to 28 U.S.C. §§ 2201 and 2202, insofar as HCC seeks a declaration of its rights and duties under the insurance policy at issue.  Jurisdiction is also conferred by 28 U.S.C. § 1332(a) because complete diversity exists between the parties, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

8.      Venue is proper in this judicial district, pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to this claim occurred within this district, and the Underlying Lawsuit is pending within this district.  In addition, the defendants have sufficient minimum contacts with this district to confer personal jurisdiction over them in this Court.

## THE UNDERLYING LAWSUIT

9.      On April 15, 2021, Burlingame filed the Underlying Lawsuit.  A true and correct copy of the operative First Amended Complaint is attached hereto as Exhibit 1. The following paragraphs set forth a summary of the allegations contained in the First Amended Complaint.

10.      Doran was the general contractor on a six-story condominium project located at 3041 Holmes Ave. in S. Minneapolis, Minnesota (the "Project").

11.      Doran allegedly hired Kinzler as a subcontractor to provide spray foam insulation services on the Project.

12.      Burlingame was allegedly employed as a bricklayer with Gresser Companies, Inc. at all relevant times.

13.      Burlingame alleges that, on or about February 16, 2017, he was laying stone on the exterior of the Project building, which was enclosed by plastic sheeting.

14.      While Burlingame was laying stone, Kinzler's personnel allegedly arrived at the Project and began to spray foam insulation from the Project building's interior in the same enclosed area where Plaintiff was working.

15.     Burlingame claims that "[t]oxic fumes from the spray insulation quickly migrated to [his] location and were inhaled by him" (the "First Exposure").

16.     Burlingame alleges that, at various times after the First Exposure, he voiced concerns about inhaling toxic fumes from the spray foam insulation to Doran's superintendent on the Project.

17.     Burlingame contends that, despite his complaints, nothing was done to remedy the issue.

18.     Kinzler allegedly continued to use the spray foam insulation, and Burlingame was again exposed to toxic fumes on or about March 29-31 and April 3-7 (the "Subsequent Exposures").

19.     Burlingame alleges that, on April 12, 2017, he was forced to leave the Project site to avoid additional exposures to the toxic fumes.

20.     Burlingame asserts that, within 24 hours of each of the three exposures, he experienced physical symptoms including, but not limited to, headaches, fogginess, and shortness of breath.  According to Burlingame, these symptoms continued throughout and following the Subsequent Exposures, requiring Burlingame to seek medical attention for his ongoing health issues and resulting in medical bills and lost income.

21.     Burlingame contends that he has endured pain and suffering from the exposures and the resulting injuries.

22.     Burlingame allegedly continues to require medical care for his injuries.

23.     Burlingame's claims are set forth in one cause of action for negligence in which he asserts that Doran and Kinzler owed him a duty of reasonable care in the

4

performance of their respective duties on the Project and a duty to perform their respective duties in accordance with the statutes and regulations of Minnesota.

24.     Burlingame alleges that Doran and Kinzler breached their respective duties, which directly and proximately resulted in Burlingame's exposure to toxic fumes and gases and his severe/permanent injuries.

25.     By way of relief, Burlingame seeks damages in excess of $50,000, costs, disbursements, and prejudgment interest, and such other relief as the Court deems just.

## HCC'S PRELIMINARY CLAIMS-HANDLING WITH RESPECT TO DORAN

26.     On April 20, 2021, HCC, through its third-party claims administrator, Network Adjusters, Inc., sent a letter to Doran disclaiming coverage for the claims asserted against Doran in the Underlying Lawsuit.

27.     On April 27, 2021, Doran sent Network Adjusters a letter contesting the bases upon which HCC disclaimed coverage for the Underlying Lawsuit and demanding that HCC defend and indemnify Doran.

28.     An actual, present, and justiciable controversy has arisen and now exists between the parties hereto regarding their respective rights, duties, and obligations under the subject HCC policy, including whether HCC has any defense or indemnity obligations thereunder based on the facts alleged in the Underlying Lawsuit.

## THE HCC POLICY

29.     HCC issued policy number H16PC30675-00 to Doran for the policy period June 13, 2016 to March 13, 2017, which was extended by Endorsement No. 1 to June 30,

2017, and then again by Endorsement No. 2 to July 30, 2017 (the "HCC Policy").  (A true and correct copy of the HCC Policy is attached hereto as Exhibit 2.)

30.     The HCC Policy provides Commercial General Liability insurance under ISO Form CG 00 01 12 07, and contains liability limits of $2 million each "occurrence[1]" and $2 million general aggregate.

31.     The HCC Policy provides the following, in relevant part:

**SECTION I – COVERAGES**
**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.  Insuring Agreement**

  **a.**  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .

  **b.**  This insurance applies to "bodily injury" and "property damage" only if:

    **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place at the "covered project";

    **(2)** The "bodily injury" or "property damage" occurs during the policy period; …

*        *        *

**SECTION V – DEFINITIONS**

*        *        *

---

[1] Terms in quotation marks are defined in the HCC Policy.

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\*    \*    \*

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\*    \*    \*

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.

\*    \*    \*

**TOTAL POLLUTION EXCLUSION
WITH A BUILDING HEATING EQUIPMENT EXCEPTION
AND A HOSTILE FIRE EXCEPTION**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2.**, **Exclusions** of **section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f.  Pollution**

**(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

\*    \*    \*

7

## COUNT I – DECLARATORY RELIEF
### (The Total Pollution Exclusion Applies to Bar Coverage)

32.    HCC restates and incorporates by reference each and every allegation set forth in the preceding paragraphs as though set forth in full herein.

33.    In the Underlying Lawsuit, Burlingame explicitly alleges that he inhaled harmful "fumes" which, within 24 hours, caused symptoms such as headaches, fogginess, and shortness of breath.

34.    The term "fumes" is one of the specifically-described types of irritants or contaminants included in the HCC Policy's definition of "pollutant."

35.    The toxic fumes which allegedly caused Burlingame to suffer harm constitute a "pollutant."

36.    Next, Burlingame explicitly alleges in Paragraph 13 of the underlying First Amended Complaint that "[t]oxic fumes from the spray insulation quickly *migrated* to [his] location and were inhaled by him."  (Emphasis added.)

37.    Burlingame further alleges that his doctor causally linked his exposure to the migrating fumes to his ongoing health issues.

38.    Accordingly, the "actual, alleged, or threatened   discharge, dispersal, seepage, *migration*, release or escape" element of the Total Pollution Exclusion is also satisfied.

39.    Based on the express and unequivocal allegations contained in the underlying First Amended Complaint, Burlingame's alleged "bodily injury" would not have occurred,

in whole or in part, but for the "migration" of the toxic spray foam insulation "fumes," which purportedly irritated and harmed him.

40.     The allegations in the underlying First Amended Complaint fall squarely within the scope of the Total Pollution Exclusion.

41.     Accordingly, even if the Underlying Lawsuit is construed as seeking damages because of "bodily injury" caused by an "occurrence," any and all such damages are excluded from coverage pursuant to the Total Pollution Exclusion.

42.     HCC has no duty to defend or indemnify Doran or Kinzler (or any other purported insured) in the Underlying Lawsuit on this basis.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Houston Casualty Company, respectfully requests that this Court enter judgment in its favor, and against Doran, Kinzler, and Burlingame, as follows:

(a)     Declaring that HCC owes no duty to defend or indemnify Doran or Kinzler under the HCC Policy with respect to the Underlying Lawsuit;

(b)     Awarding HCC its attorneys' fees, costs, and disbursements in prosecuting this action, to the extent permitted by law; and

(c)     Granting HCC any other and further relief as this Court deems just and appropriate.

Dated:  June 15, 2021                   Respectfully submitted,


                                        /s/ Jeffrey R. Mulder
                                        Jeffrey R. Mulder
                                        Minnesota Bar No. 0389205
                                        BASSFORD REMELE
                                        100 South 5th Street, Suite 1500
                                        Minneapolis, MN 55402-1254
                                        Telephone: (612) 376-1622
                                        Email:  jmulder@bassford.com

                                        Jordon S. Steinway
                                        Illinois Bar No. 6284065
                                        BATESCAREY LLP
                                        191 North Wacker, Suite 2400
                                        Chicago, IL 60606
                                        Telephone:  (312) 762-3169
                                        Email:  jsteinway@batescarey.com
                                        *Pro Hac Vice admission pending

                                        Counsel for Houston Casualty Company